UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | | |
|---|---|---|---|
| DAMION BRADLEY JACKSON, | ) | | |
| | ) | | |
| Petitioner, | ) | | |
| | ) | | |
| v. | ) | Nos: | 3:06-cr-005 |
| | ) | | 3:10-cv-417 |
| UNITED STATES OF AMERICA, | ) | | (VARLAN/SHIRLEY) |
| | ) | | |
| Respondent. | ) | | |

**MEMORANDUM**

This is a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 filed by petitioner Damion Bradley Jackson ("petitioner"). The government has filed its response to the motion and petitioner has filed his traverse. For the following reasons, the § 2255 motion to vacate will be **DENIED** and this action will be **DISMISSED**.

**I.     Standard of Review**

This Court must vacate and set aside petitioner's conviction upon a finding that "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. To prevail under § 2255, petitioner "must show a 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1968)).

Under Rule 8 of the Rules Governing Section 2255 Proceedings In The United States District Courts, the Court is to determine after a review of the answer and the records of the case whether an evidentiary hearing is required. If the motion to vacate, the answer and the records of the case show conclusively that petitioner is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986).

## II.     Factual Background

Pursuant to a written plea agreement, petitioner pleaded guilty to possession with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1), and felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); he was sentenced to concurrent terms of imprisonment of 70 months on each conviction. [Criminal Action No. 3:06-cr-005, Doc. 101, Judgment]. Petitioner filed a notice of appeal to the Sixth Circuit, which was subsequently dismissed on motion of petitioner. [*Id.*, Doc. 122, Order granting motion to dismiss]. In support of his § 2255 motion, petitioner alleges two instances of ineffective assistance of counsel.

## III.    Discussion

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court established a two-part standard for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance

2

> prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.

To establish that his attorney was not performing "within the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson*, 397 U.S. 759, 771 (1970), petitioner must demonstrate that the attorney's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 687-88. In judging an attorney's conduct, a court should consider all the circumstances and facts of the particular case. *Id*. at 690. Additionally, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

The issue is whether counsel's performance "was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (*en banc*). Because he is seeking relief under § 2255, petitioner bears the burden of proving by a preponderance of the evidence that his counsel was deficient. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

Petitioner alleges that his attorneys (1) failed to raise issues during the suppression hearing that could have resulted in the suppression of the evidence against him, and (2) failed

3

to raise issues during sentencing that could have reduced his sentence and given him credit for time-served. The Court will consider these allegation in turn.

### A. Suppression Hearing

Petitioner's vehicle was searched after a traffic stop and incident to petitioner's arrest for driving without a license. Petitioner's attorney filed a motion to suppress the items seized after petitioner's arrest and argued that the seizure violated the "Fourth and Fourteenth Amendments to the Constitution of the United States" because petitioner "was seized without probable cause and without a warrant." [Criminal Action No. 3:06-cr-05, Doc. 44, Motion to Suppress, p. 1].

The magistrate judge conducted an evidentiary hearing on the motion to suppress [*id.*, Doc. 54, Transcript of Evidentiary Hearing] and subsequently issued a written Report and Recommendation, in which he recommended that the motion to suppress be denied. [*Id.*, Doc. 64, Report and Recommendation filed June 28, 2007]. The magistrate judge specifically determined that the search after petitioner's arrest was a valid search incident to arrest and relied on *New York v. Belton*, 453 U.S. 454, 460 (1981), *overruled by Arizona v. Gant*, 556 U.S. 332 (2009).

Petitioner filed his objections to the Report and Recommendation. [*Id.*, Doc. 65, Objection]. The Court overruled the objections and denied the motion to suppress evidence. [*Id.*, Doc. 70, Memorandum and Order]. Petitioner subsequently entered an unconditional guilty plea to the drug and firearm charges for which he stands convicted, in which he specifically agreed "not to file a direct appeal of any issues in this case including the

4

defendant's motion to suppress evidence in this case." [*Id*., Doc. 86, Plea Agreement, pp. 7-8, ¶ 14(a)].

As part of his plea agreement, petitioner stipulated to the following factual basis in support of his guilty plea:

> On May 12, 2005 Sergeant Travis Brasfield, Officer Boatman, and Officer Blevins of the Knoxville Police Department were assigned to the West District Patrol Community Response Team. While with the Response Team that night they were working a "drug complaint" at the Pines Apartments, off Francis Road in Knoxville, Tennessee, in the Eastern District of Tennessee. Officer Blevins, in an unmarked car and in plain clothes, was positioned in front of the apartment where drug activity was suspected. Sergeant Brasfield and Officer Boatman were on Grenoble Drive inside a subdivision across the road from the Pines Apartments. They were in separate patrol cars. At approximately 11:54 p.m. Officer Blevins called Sergeant Brasfield and Officer Boatman to tell them that a car that had been at the suspected apartment was coming out of the apartment complex. It was a black Caprice which had a loud muffler. Officer Blevins also described the black Caprice as having tinted windows. Officer Brasfield saw this vehicle turn on to Francis Road from the Pines apartment complex. Sergeant Brasfield testified that, "We heard the pipes on the car. It was pretty loud coming out of the neighborhood." Officer Brasfield then drove down Grenoble Drive to Francis Road in order to follow the vehicle. He topped the hill on Francis Road and saw the vehicle run the stop sign and turn left on to Helmbolt Road without signaling. Sergeant Brasfield caught up to the car on Helmbolt Road, "just prior to Piney Grove Church Road." Sergeant Brasfield then called Officer Boatman and told him where he was. Officer Boatman "had actually went [sic] right on another street trying to catch up to us ...." Sergeant Brasfield said that the windows of the car "were dark to the point I couldn't see inside the vehicle even using my spotlight." Sergeant Brasfield used his public address system to instruct the driver to turn off the engine and "step back to my vehicle." Sergeant Brasfield asked the driver for his driver's license. The driver did not have a license and told Sergeant Brasfield that his license was suspended. The driver, the defendant Damion Jackson, was handcuffed and placed in the back of Sergeant Brasfield's car. Jackson was not free to leave and was arrested for operating a motor vehicle without a license. While Sergeant Brasfield was running a record check on Jackson and writing tickets, Officer Boatman arrived and searched the car. In a pocket behind the

5

passenger seat, Officer Boatman found what appeared to be crack cocaine, yellowish white rocks, in several baggies. Boatman also found a bag of a white powder believed to be cocaine. A small amount from the baggies was field tested by Boatman and tested positive for cocaine.

Officer Boatman also found in the floor behind the driver's seat, a Ruger 9mm pistol, Model P89DC, serial number 309-44032. The weapon was loaded, with a live round in the chamber and a loaded magazine. When Officer Boatman checked the serial number of the Ruger 9mm through NCIC he found that it was a stolen gun. Defendant's possession of the weapon is based upon the fact that it was found in the car behind the driver's seat. In the driver's side door was found a baggie containing several live rounds of .45 caliber ammunition. Officer Boatman found $375.00 on Mr. Jackson's person. Later, when Mr. Jackson was being booked at the Knox Count Jail, an additional $2,100.00 was found on Mr. Jackson's person.

The Ruger 9mm pistol is a firearm under federal law and found to function as designed. It was not manufactured in the State of Tennessee and to reach the State of Tennessee would have to have crossed state lines, thus affecting interstate commerce.

The lab report from the Tennessee Bureau of Investigation shows that the yellow rock-like substance found in the car was 7.5 grams of cocaine base, a Schedule II controlled substance. The white powder was 8.7 grams of cocaine. Defendant agrees that he possessed this cocaine in order to distribute it.

Defendant Jackson had pleaded guilty to Possession of Cocaine Less than .5 Grams With Intent to Sell, a felony in the State of Tennessee, on May 2, 2005 in Division I, Criminal Court for Knox County, Tennessee, No. 79816. The defendant agrees that this plea is a conviction for purposes of 18 U.S.C. § 922(g)(1).

[*Id*. at 3-5, ¶ 4].

At the time of petitioner's arrest, and at the time the Court denied the motion to suppress, a police officer could search the passenger compartment of an automobile incident to the lawful custodial arrest of the occupant of the vehicle without a warrant or probable

6

cause, even when the occupant was outside the vehicle and handcuffed. *See New York v. Belton*, 453 U.S. at 460, *overruled by Arizona v. Gant*, 556 U.S. 332 (2009). In *Gant*, however, the Supreme Court rejected a broad reading of *Belton* and held that police are authorized "to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." 556 U.S. at 343. The Court also held that "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Id*. (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004) (Scalia, J., concurring in judgment)). *Gant* was decided on April 21, 2009, some nine months after petitioner was sentenced.

Petitioner now claims that his attorney failed to put forth the arguments that petitioner asserted to him "both orally and through a brief titled 'Motion to Review and Consider Information'" to the effect that the search of his vehicle was not a reasonable search. [Criminal Action No. 3:06-cr-05, Doc. 128, Motion to Vacate, p. 18]. According to petitioner, the brief to which he refers is attached as Exhibit C; Exhibit C is actually contained in an earlier-filed Notice of Exhibits. [*Id*., Doc. 116].[1]

---

[1]While petitioner's appeal was pending, he filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. [Criminal Action No. 3:06-cr-05, Doc. 115, Motion to Vacate]. Petitioner submitted five exhibits in support of that motion. [*Id*., Doc. 116, Notice for Exhibits, Exhibits A-E]. The § 2255 motion was denied because his appeal was still pending. [*Id*., Doc. 118, Order]. After petitioner's appeal was dismissed, he filed the pending § 2255 motion [*id*., Doc. 128, Motion to Vacate], which restates the claims in the previous § 2255 motion. The memorandum in support of the pending § 2255 is an exact copy of the memorandum in support of the previous § 2255; the memorandum references Exhibit C which, as noted, was contained in the Notice of Exhibits filed in support of the previous § 2255.

7

In that brief, petitioner argued that the facts of his case were different than those in *Belton* because (1) his crime did not give the officers reason to believe contraband would be in the vehicle, and (2) he was more than fifteen feet away from the vehicle at the time of the search. [*Id.*, Doc. 116, Exhibit C, Motion to Review and Consider Information, pp. 3-6]. In essence, petitioner is contending that counsel was ineffective in failing to anticipate the *Gant* decision. "The failure to anticipate a change in the law will not generally constitute ineffective assistance of counsel." *Brunson v. Higgins*, 708 F.2d 1353,1356 (8th Cir.1983) (citations omitted); *see also Lucas v. O'Dea*, 179 F.3d 412, 420 (6th Cir. 1999) ("'Only in a rare case' will a court find ineffective assistance of counsel based upon a trial attorney's failure to make an objection that would have been overruled under the then-prevailing law.") (citation omitted).

Petitioner's attorney cannot be faulted for failing to anticipate the Supreme Court's decision in *Gant*. In addition, petitioner's argument overlooks the fact that had counsel made the argument, it would have been overruled based upon the existing law under *Belton*. Furthermore, to the extent petitioner seeks to raise a Fourth Amendment claim in this § 2255 proceedings, he waived any right to do so because he entered an unconditional guilty plea. *See, e.g., United States v. Turner*, 272 F.3d 380, 389 (6th Cir. 2001) (an "unconditional guilty plea waives all nonjurisdictional defenses" to a conviction).

### B.     Sentencing Hearing

Petitioner alleges that counsel failed to brief the issue of whether petitioner's state sentences were for conduct relevant to his federal crimes, such that he should have received

credit or a sentence reduction on that basis. Petitioner argues that, had counsel briefed the issue, he would have received a reduced sentence. The record, however, shows that the Court considered and rejected this argument.

According to petitioner, he was arrested for possession with intent to sell crack cocaine on December 13, 2002, and for an offense of the same nature on January 4, 2003. In August 2005, petitioner was sentenced in state court to three years of imprisonment for the December 13, 2002, and January 4, 2003, offenses. In the meantime, he was arrested on the charge underlying the instant federal offense on May 12, 2005. On year later, in August 2006, he was indicted by a federal grand jury on the instant offense, and he came into federal custody on August 30, 2006. [Criminal Action No. 3:06-cr-05, Doc. 128, Motion to Vacate, p. 31]. In consideration of petitioner's guilty plea, the United States agreed "not to oppose the Court crediting the defendant with any pre-conviction jail credit to which he is legally entitled." [*Id*., Doc. 86, Plea Agreement, p. 7, ¶ 12].

In the Sentencing Memorandum, defense counsel argued that petitioner should receive credit for the time he spent in custody on his state charges. [*Id*., Doc. 96, Sentencing Memorandum, pp. 6-7]. Counsel specifically stated that petitioner came into state custody on June 1, 2005, where he remained until his transfer to federal custody on August 30, 2006, and thus should receive credit on his federal sentence from June 1, 2005, until his sentencing in federal court.

Petitioner's sentencing hearing commenced on April 30, 2008. [*Id*., Doc. 106, Transcript of Sentencing Hearing on April 30, 2008]. Defense counsel raised the issue of

9

credit and the Court noted that was a decision for the Bureau of Prisons. [*Id*. at 12]. Counsel countered that petitioner should receive credit because his prior convictions were relevant conduct to his case. [*Id*. at 13]. The Court then stated to petitioner "your argument that you should be given latitude because of the time spent in state confinement may have some merit. Unfortunately, we have not identified that and have not checked it out." [*Id*. at 19]. The Court then continued the sentencing to give the probation officer "the opportunity to see if this time that you have spent could be determined to be related under the federal sentencing guidelines, which could give you a substantial break in your sentence." [*Id*.].

Sentencing resumed on July 9, 2008. [*Id*., Doc 105, Transcript of Sentencing Hearing on July 9, 2008]. At that time, the Court stated that it had tried its best "to figure out a way to" give petitioner credit for his state time but hadn't "been successful." [*Id*. at 3]. The Court went on to note that "the Court was hoping that we would be able to figure out a way that we could give the Defendant credit for his state service. It does not appear, under relevant Sixth Circuit precedent and the regulations of the guidelines, that we can do that." [*Id*. at 4]. The Court then sentenced petitioner at the bottom of his advisory guideline range. [*Id*. at 5].

Petitioner next filed a *pro se* motion for an adjustment of his sentence based upon his claim that he was entitled to credit. [*Id*., Doc. 108, Motion to Adjust Sentence]. The Court denied the motion, stating that "[t]his argument was considered and rejected by the court at defendant's sentencing hearing on July 9, 2008. Moreover, the decision whether to give defendant credit on his federal sentence for time spent in state custody is at the discretion of the Bureau of Prisons." [*Id*., Doc. 109, Order].

10

Despite the fact that counsel did not file a brief on the issue, counsel did raise the issue of credit with the Court, both in the Sentencing Memorandum and during the sentencing hearing. The record clearly shows that the Court fully considered the issue but reluctantly concluded, under the relevant law, that petitioner was not entitled to credit for his state time. This claim of ineffective assistance of counsel lacks merit.

Based upon the foregoing, petitioner has failed to demonstrate that he received ineffective assistance of counsel under the standard set forth in *Strickland*.

## IV. Conclusion

Petitioner is not entitled to relief under § 2255 and his motion to vacate, set aside or correct sentence will be **DENIED**. This action will be **DISMISSED**. The Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** petitioner leave to proceed *in forma pauperis* on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE ORDER WILL ENTER.**

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE

11